AKRON HOME MEDICAL SERVICES, INC., APPELLANT, *v.* LINDLEY,
TAX COMMR., APPELLEE.

[Cite as Akron Home Medical Services, Inc. *v.* Lindley (1986),
25 Ohio St. 3d 107.]

(No. 85-1852—Decided July 23, 1986.)

*Buckingham, Doolittle & Burroughs Co., L.P.A., Robert W. Maloney* and *Dana A. Rose,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

HOLMES, J. The issues raised in this appeal are whether R.C. 5739.02(B)(18) provides an exemption from sales taxation applicable to all or part of the items sold by appellant, and whether appellant's sales to recipients of Medicare are tax-exempt sales to the federal government. For the reasons set forth below, we reverse the decision of the board in part and affirm it in part.

The pertinent provisions governing the imposition of Ohio's sales tax are found in R.C. 5739.01 *et seq.* The subject of such tax is "each retail sale made in this state" (R.C. 5739.02) as well as sales "the price of which con-

sists in whole or in part of rentals" (R.C. 5739.02[A]). The transactions which are the subject of the appeal herein involve sales and rentals; thus, appellant is required to comply with R.C. 5739.02(A) unless it can be demonstrated that one of the exceptions to the sales tax contained within subsection (B) is applicable.

Appellant relies on R.C. 5739.02(B)(18) which exempted: "Sales of drugs dispensed by a registered pharmacist upon the order of a practitioner licensed to prescribe, dispense, and administer drugs to a human being in the course of his professional practice, artificial limbs or portion thereof for humans, braces and other similar medical or surgical devices for supporting weakened or useless parts of the human body, wheel chairs, ostomy appliances and the supplies and accessories for the function and maintenance thereof, insulin as recognized in the official United States pharmacopoeia, urine testing materials when used by diabetics to test for glucose or acetone, and hypodermic syringes and needles when used by diabetics for insulin injections."

*Exceptions* to a particular tax are governed by the oft-stated rules to be found in *Youngstown Metro. Housing Auth.* v. *Evatt* (1944), 143 Ohio St. 268, 273 [28 O.O. 163]:

"By the decisions it is established in Ohio that exemption statutes are to be strictly construed, it being the settled policy of this state that all property should bear its proportionate share of the cost and expense of government; that our law does not favor exemption of property from taxation; and hence that before particular property can be held exempt, it must fall clearly within the class of property specified * * * to be exempt.

"The foundation upon which that policy rests is that statutes granting exemption of property from taxation are in derogation of the rule of uniformity and equality in matters of taxation. (See 38 Ohio Jurisprudence, 853, section 114.)" See, also, *e.g.*, *id.*, at paragraph two of the syllabus; *Cleveland-Cliffs Iron Co.* v. *Glander* (1945), 145 Ohio St. 423, 430 [31 O.O. 39]; *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407 [47 O.O. 313], paragraph two of the syllabus; *First National Bank of Wilmington* v. *Kosydar* (1976), 45 Ohio St. 2d 101 [74 O.O.2d 206]; *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 425 [21 O.O.3d 261]; *National Church Residences* v. *Lindley* (1985), 18 Ohio St. 3d 53, 55.

It is quite apparent that the exception for "braces and other similar medical or surgical devices for supporting weakened or useless parts of the human body" encompasses more than merely braces. The walkers, crutches and canes, although not braces, are easily comprehended within the exception since they are ambulatory supports for "weakened or useless" legs. Also, one of the uses of such devices is for support of weakened limbs *during movement,* whether walking or otherwise. The above structural supports are therefore functionally similar to braces. They are generally expected to be used for supports for particular parts of the body, as are braces. There was clear, uncontradicted testimony to this

effect before the Board of Tax Appeals. Accordingly, we reverse the finding below which failed to exempt the sale of the above devices.

Appellant's claim that the tanks of oxygen and oxygen equipment are exempt is not sustainable from R.C. 5739.02(B)(18). Appellant argues that oxygen and/or equipment sold under the circumstances herein do support "weakened * * * parts of the human body," *i.e.,* the lungs and heart. The difficulty arises from the controlling phrase "braces and other similar * * * devices * * *."

Under the canon of statutory construction commonly referred to as *ejusdem generis* (literally "of the same kind"), whenever words of general meaning follow the enumeration of a particular class, then the general words are to be construed as limited to those things which pertain to the particularly enumerated class. See, *e.g., Glidden Co.* v. *Glander* (1949), 151 Ohio St. 344, 350 [39 O.O. 184]; *Smilack* v. *Bowers* (1958), 167 Ohio St. 216, 218 [4 O.O.2d 271]; *State* v. *Aspell* (1967), 10 Ohio St. 2d 1 [39 O.O.2d 1], at paragraph two of the syllabus. The applicability of this canon in the present case is strengthened by inclusion of the word "similar" which further limits the general term. Accordingly, a device "for supporting weakened or useless parts of the human body" must be in the class of, and "similar" to, "braces" if the sale thereof is to be exempted from taxation.

It becomes clear that braces are of that group which *physically* supports parts of the body, as opposed to a broader type of "support" which could include chemically induced support of particular organs. Nothing about oxygen is similar to braces. The two types of oxygen equipment are mere delivery systems and do not actually support a part of the body in any direct fashion. Nothing sought to be exempted actually inflates the lungs, as might a lung machine.

Appellant has also asserted that the sales of oxygen and oxygen equipment are not taxable under that portion of R.C. 5739.02(B)(18) which exempts sales of prescription drugs. At the hearing, appellant offered proof that the use of oxygen was ordered by a doctor who issued an accompanying prescription and that appellant required such prescription as a condition of its sales of oxygen and oxygen equipment.

The statute relied upon exempts "[s]ales of drugs dispensed by a registered pharmacist upon the order of a practitioner licensed to prescribe * * *." The plain language of this statute requires that whatever is comprehended by the term "drug" must be "dispensed by a registered pharmacist * * *." Appellant is not a pharmacist and, consequently, cannot exempt sales of oxygen and oxygen equipment merely by refusing, on private authority, to make such sales without a prescription. Accordingly, appellant's claim of exemption cannot stand.

Commode chairs, non-mechanical commode raisers, and ordinary beds are supports in the sense that they are said to support one's body. As such, they can hardly be considered within the class of supports similar to braces. Many non-exempt objects might be said to support the body

generally. However, to come within the class of supports which are exempt, the device must be so designed as to support particular body parts. None of the above devices is in fact designed for specified portions of the human anatomy. Thus, sales of such may not be exempted from sales taxation.

On the other hand, specialized hospital beds which possess mechanical controls to adjust portions of the bed are designed to support specific parts of the anatomy. These beds are sold specifically to provide particular support for the head, neck, back, or legs, by shaping the reposed position of the human body so as to redistribute pressure away from specific body parts. Such function is quite similar to that of a brace. Accordingly, we reverse the Board of Tax Appeals' determination as to the hospital beds.

Appellant points to later amendments to R.C. 5739.02(B)(18) which clearly exempt the transactions at issue from sales taxes.[1] Appellant's argument is that the later amendments merely codify the common law applicable under the earlier statute. This argument, without more, cannot overcome the requirement that courts of review must apply the statute in effect at the time of the audit. See R.C. 1.58 and Section 28, Article II of the Ohio Constitution; see, also, *Giant Tiger Drugs* v. *Kosydar* (1975), 43 Ohio St. 2d 103, 107 [72 O.O.2d 58].

Appellant also points to the fact that payments for many of its sales were made by Medicare pursuant to Section 1395 *et seq.,* Title 42, U.S. Code, and therefore ought to be exempted from sales taxation. This contention is based upon the exemption for "[s]ales not within the taxing power of this state under the constitution of the United States," as provided by R.C. 5739.02(B)(10). Appellant reasons that since Medicare pays for the items purchased, pursuant to an agreement between the government and the supplier, that the sales tax is a forbidden tax on purchases by the federal government. See, *e.g., United States* v. *Tax Comm. of Mississippi* (1975), 421 U.S. 599.

It is, of course, axiomatic that a state may not levy a direct tax on the federal government or an instrumentality thereof. *McCulloch* v. *Maryland* (1819), 17 U.S. (4 Wheat.) 316. However, the mere voluntary payment by the federal government of an obligation incurred by a Medicare recipient hardly rises to the level of a direct tax. As a factual matter, the purchaser

---

[1] R.C. 5739.02(B) was amended effective January 16, 1981 to exempt the following:

"(18) * * * hospital beds when purchased for use by persons with medical problems for medical purposes; and oxygen and oxygen dispensing equipment when purchased for use by persons with medical problems for medical purposes;

"(19) Sales of artificial limbs or portion thereof, breast prostheses, and other prosthetic devices for humans; braces or other devices for supporting weakened or nonfunctioning parts of the human body; wheelchairs; devices used to lift wheelchairs into motor vehicles and parts and accessories to such devices; crutches or other devices to aid human perambulation; and items of tangible personal property used to supplement impaired functions of the human body such as respiration, hearing, or elimination. * * *" (138 Ohio Laws, Part II, 3380, 3384.)

selects the supplier of medical devices, receives title to as well as possession of the personal property sold, and is the person against whom the sales tax is ultimately levied. The federal government, after the fact of the taxable sale, determines how much of the purchase price is reimbursable. No portion of the sales tax is owed by or collectible from anyone not the consumer. See R.C. 5739.03. Accordingly, R.C. 5739.02(B)(10) is inapplicable to the sales transactions herein.

Appellant has also objected to the method used by the Tax Commissioner to arrive at the tax assessment. The method used is referred to as a "test check" and allows the commissioner to avoid an audit of the entire sales record which, in the present case, was quite substantial. Appellant asserts that under R.C. 5739.11 and applicable case law the authority of the commissioner to use the test check auditing procedure is severely circumscribed to instances where the taxpayer failed to maintain proper records. We need not decide upon the scope of authority permitted the commissioner under R.C. 5739.11 since there is authority to conduct such test checks in R.C. 5739.13. R.C. 5739.13 stated: "The commissioner may make an assessment against any vendor who fails to file a return required by section 5739.12 of the Revised Code or fails to remit the proper amount of tax in accordance with the provisions of section 5739.12 of the Revised Code. When information in the possession of the commissioner indicates that the amount required to be collected under the provisions of section 5739.02 of the Revised Code is, or should be, greater than the amount remitted by the vendor, the commissioner may upon the basis of test checks of a vendor's business for a representative period, which are hereby authorized, determine the ratio which the tax required to be collected * * * bears to the receipts from the vendor's taxable retail sales, which determination shall be the basis of an assessment as herein provided in this section."

Appellant waived any objection by entering into an enforceable, written agreement with the commissioner expressly permitting a test check of selected sales records. The assertion that appellant rescinded such agreement is not supported by the record before this court. We therefore affirm the findings of the Board of Tax Appeals on this issue.

The decision of the board is reversed in part in conformance with this opinion and is, in all other respects, affirmed.

*Decision affirmed in part*
*and reversed in part.*

SWEENEY, LOCHER, C. BROWN and WOLFF, JJ., concur.

CELEBREZZE, C.J., and DOUGLAS, J., concur in judgment only.

WOLFF, J., of the Second Appellate District, sitting for WRIGHT, J.