DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant, Steven R. Fleck, appeals the judgment of the Summit County Court of Common Pleas that granted summary judgment to Defendants-Appellees. We affirm.
 {¶ 2} Fleck and Defendant-Appellant Patrick Hammer are affiliated with *Page 2 
the financial services firm of MONY as financial services agents.[1]
In 1998, Fleck's manager assigned the Swaldo family and their business interests to Fleck as an "orphan client," or one whose primary agent's affiliation with MONY has terminated. Fleck, who was just beginning his career, soon found some of the Swaldo clients' financial needs to be more complex than anticipated. Hammer, who had more experience and who was licensed to deal with more sophisticated financial products, came alongside Fleck to service the Swaldo clients. The relative amount of work that they performed and the relative split of fees between them varied on a transaction-by-transaction basis. They did not have a written agreement to split fees according to any predetermined percentage, nor was such an agreement customary in their profession.
 {¶ 3} In 2002, Hammer became involved in a complex and sensitive acquisition transaction with the Swaldo clients that required a high degree of confidentiality and high-level professional licensure. Fleck was not adequately licensed to handle the transaction. When he discovered that Hammer had participated in the transaction, however, he approached Hammer and demanded a share of the transaction fees. Hammer declined, and subsequent attempts on the part of MONY/AXA to resolve the dispute met with little success. *Page 3 
 {¶ 4} On September 5, 2005, Fleck filed this action in the Stark County Court of Common Pleas, alleging that Hammer continued to provide financial services to Swaldo, but neither informed Fleck of the transactions nor paid him a portion of the commissions. Fleck's theories of recovery were less than clear, but all presumed the existence of an obligation on the part of Hammer to share commissions earned as a result of Swaldo business. Fleck maintained that Hammer "intentionally, maliciously, and fraudulently concealed the fact that he was conducting sales * * * and receiving 100% of the commissions for himself." Fleck also alleged that Hammer committed "a negligent or intentional breach of [his] professional obligations," violated "industry standards," and breached their business relationship. In his amended complaint, filed September 29, 2005, Fleck provided some clarification of the basis for his claims, maintaining that Hammer's alleged concealment constituted intentional interference with business relations; a breach of fiduciary duty; and a "violation of custom, practice, and standards of the financial professional industry."
 {¶ 5} With respect to the MONY defendants, Fleck alleged that MONY failed to investigate and correct Hammer's alleged wrongdoing and argued that, regardless, the MONY defendants were necessary parties to the litigation in order to afford Fleck an adequate remedy in the form of unpaid commissions.
 {¶ 6} On November 29, 2005, venue was transferred to Summit County on Hammer's motion. MONY and Hammer moved for summary judgment on March *Page 4 
28, 2006, and May 30, 2006, respectively, and Fleck responded on June 29, 2006. The trial court granted summary judgment in favor of each defendant on November 16, 2006. This appeal followed.
 ASSIGNMENT OF ERROR I "The Statute of Frauds does not apply to the circumstances and conduct at issue in this case, and the summary judgment should not have been granted based upon the Statute of Frauds."
 {¶ 7} Fleck has argued that the trial court erred by holding that the Statute of Frauds barred recovery because, according to Fleck, his fee-sharing arrangements with Hammer were short-term agreements memorialized in writing on a transaction-by-transaction basis. Fleck has also argued that summary judgment should not have been granted due to issues of fact regarding fraudulent concealment by Hammer. We disagree with Fleck and conclude, although on different grounds, that summary judgment was properly granted to the defendants.
 {¶ 8} In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829. All facts must be construed in favor of the nonmoving party. Horton v. Harwich Chem. Corp. (1995), 73 Ohio St.3d 679, 686-87. On a motion for summary judgment, the moving party "`bears the initial burden of informing the trial court of the basis for *Page 5 
the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.'" Vahila v.Hall (1997), 77 Ohio St.3d 421, 429, quoting Dresher v. Burt (1998),75 Ohio St.3d 280, 293. The nonmoving party then has a reciprocal burden to set forth specific facts, by affidavit or as otherwise provided by Civ.R. 56(E), which demonstrate that there is a genuine issue for trial.Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, at ¶ 10.
 {¶ 9} In his motion for summary judgment, Hammer argued that the true nature of Fleck's amended complaint was an alleged breach of an oral agreement to share commissions, not fraudulent concealment or interference with a business relationship. Consequently, Hammer maintained, Fleck's claims failed as a matter of law because any alleged agreement between the two for an ongoing division of commissions was subject to Ohio's Statute of Frauds, R.C. 1335.05. In the alternative, Hammer construed Fleck's claims as tort claims and argued that he was entitled to summary judgment on each. Similarly, MONY/AXA characterized Fleck's claims against it as negligence and breach of fiduciary duty and argued in its motion for summary judgment that it owed no legal duty to Fleck with respect to the allegations contained in the amended complaint.
 {¶ 10} In response to Hammer's motion for summary judgment, Fleck agreed that he did not have an overarching agreement with Fleck to share fees and confirmed that a separate agreement was made with respect to each transaction. *Page 6 
He argued that the real substance of his claims was not breach of contract and, therefore, that the Statute of Frauds had no application. In response to MONY/AXA's motion, Fleck maintained that MONY/AXA had a duty to take action in response to Hammer's alleged misconduct.
 {¶ 11} Noting that there is no evidence of a written agreement between Fleck and Hammer, the trial court concluded that any oral agreement to divide commissions from the sale of financial products to Swaldo would be unenforceable pursuant to the Statute of Frauds. The trial court granted Hammer's motion for summary judgment on this basis. Having concluded that there was no enforceable contractual duty on Hammer's part, the trial court also concluded that MONY/AXA owed Fleck no duty to intervene in the fee dispute and granted its motion for summary judgment as well.
 {¶ 12} This court will affirm a trial court's decision granting summary judgment on other grounds if the trial court's decision is legally correct. See Moody v. Coshocton Cty., 9th Dist. No. 05CA0059,2006-Ohio-3751, at ¶ 16, citing Cook Family Invests. v. Billings, 9th Dist. Nos. 05CA008689, 05CA008691, 2006-Ohio-764, at ¶ 19. As inMoody and Cook, we conclude that the trial court in this matter reached the right result, but for the wrong reason.
 {¶ 13} As an initial matter, we note that although all parties to this case made liberal reference to Fleck's deposition in support of their respective pleadings on summary judgment and the trial court's docket reflects a notice of *Page 7 
filing the two-volume transcript, the transcript itself does not appear to have been filed with the trial court and is not part of the record on appeal. See App.R. 10(A).
 {¶ 14} It is undisputed that Fleck and Hammer did not have a written agreement to split fees generated by the Swaldo clients on all future business. The evidence properly before the trial court on summary judgment demonstrates that such arrangements were customarily handled on a transaction-by-transaction basis and the terms varied according to the work performed. As the trial court held, the Statute of Frauds bars any oral agreement to this effect because service contracts of indefinite duration that require the payment of fees or commissions for the ongoing sales of a product are not, by their terms, capable of performance within a year. See Daup v. Tower Cellular, Inc. (2000),136 Ohio App.3d 555, 565, adopting the reasoning of Zupan v. Blumberg (N.Y.App. 1957), 2 N.Y.2d 547, 550. To the extent that Fleck's claims are based on breach of an alleged oral agreement, as Fleck asserted in testimony submitted to the trial court, summary judgment was properly granted to Hammer on that basis.
 {¶ 15} In addition, however, Fleck advanced various theories of tort liability in this case, including fraudulent concealment, intentional interference with business relationships, and breach of fiduciary duty on the part of Hammer, as well as negligence and breach of fiduciary duty on the part of MONY/AXA. We conclude that Hammer and MONY/AXA are entitled to summary judgment as a matter of law on each of these claims. *Page 8 
 {¶ 16} It is undisputed that Fleck and Hammer worked as financial consultants affiliated with MONY/AXA and that Hammer was the more senior of the two. The Swaldo clients were "assigned" to Fleck as "orphan clients," but it is apparent that the consultant-client relationship with Fleck was not exclusive. Multiple MONY/AXA professionals performed work for clients at any given time. Their levels of responsibility varied with respect to each assignment, as did their agreements — if any — to divide fees. As Hammer testified, clients were ultimately not the clients of an individual consultant, but of MONY/AXA.
 {¶ 17} In light of these undisputed facts, Fleck cannot establish the duties that are at the heart of each of his tort claims. To establish interference with business relationships, a plaintiff must demonstrate the existence of a business relationship known to the defendant from which the duty to refrain from interference flows. See Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc. (2002),148 Ohio App.3d 596, 2002-Ohio-3932, at ¶ 23. Fleck held some degree of responsibility for the Swaldo clients, but this assignment itself was made by MONY/AXA. It was MONY/AXA, and not Fleck, which enjoyed a business relationship with the Swaldo clients.
 {¶ 18} A breach of fiduciary duty can only be established where there is a fiduciary relationship acknowledged by both parties which gives rise to the corresponding duty. "A fiduciary relationship may be created either formally, by contract, or informally. An informal relationship, however, cannot be unilateral, *Page 9 
and occurs only where `both parties understand that a special trust or confidence has been reposed.'" (Internal citations omitted.) Ligman v.Realty One Corp., 9th Dist. No. 23051, 2006-Ohio-5061, at ¶ 9. There was neither a written contract nor an oral agreement establishing a fiduciary relationship between Fleck and Hammer, and Hammer emphatically denied the existence of such a relationship. Similarly, there was neither a relationship between the Swaldo clients and Fleck nor a relationship between Hammer and Fleck that created a duty on the part of Hammer to disclose his business dealings to Fleck, a fellow financial consultant. In the absence of a duty to disclose, Fleck's fraudulent concealment claim fails as well. See Groob v. KeyBank (2006),108 Ohio St.3d 348, 2006-Ohio-1189, at ¶ 47 (defining the elements of fraudulent concealment).
 {¶ 19} Having concluded that Fleck's claims against Hammer fail as a matter of law, we agree with the trial court that Fleck's claims against MONY/AXA, which derive from his claims against Hammer, must fail as well. Fleck's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "If the granting of the summary judgment in favor of Hammer is reversed, the within case should also proceed on the merits against MONY/AXA."
 {¶ 20} Fleck's second assignment of error rests on his first. Having concluded that Hammer and MONY/AXA were entitled to summary judgment, Fleck's second assignment of error is rendered moot. *Page 10 
 {¶ 21} Fleck's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
DICKINSON, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] During the course of this litigation, MONY — a family of financial services providers — merged with AXA. References to MONY or to MONY/AXA in this opinion are understood to refer to these defendants-appellees collectively. *Page 1