BUILDING INDUSTRY CONSULTANTS, INC., Appellant,

v.

3M PARKWAY, INC., Appellee.

[Cite as *Bldg. Industry Consultants, Inc. v. 3M Parkway, Inc.*, 182 Ohio App.3d 39, 2009-Ohio-1910.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 08CA009433.

Decided April 27, 2009.

_____

David W. Goldense;  and James L. Deese, for appellant.

Joe Levin and Aparesh Paul, for appellee.

WHITMORE, Judge.

{¶ 1} Plaintiff-appellant, Building Industry Consultants, Inc. ("BIC"), appeals from the judgment of the Lorain County Court of Common Pleas granting summary judgment in favor of defendant-appellee, 3M Parkway, Inc.  This court reverses.

## I

{¶ 2} In 2003, 3M Parkway entered into a lot-purchase agreement with NVR, Inc., whereby 3M Parkway would develop a number of single-family lots on its property and then sell the property to NVR. Subsequently, 3M Parkway and BIC began negotiating for BIC to become 3M Parkway's construction manager on the project.  On July 8, 2003, BIC's president, David Lynn, sent 3M Parkway a cost proposal, which included a breakdown of costs and estimated the total development work cost to be $2,301,570.  Lynn sent the proposal on letterhead from Prete Builders, Inc., a separate entity to which he belonged.  On March 23, 2004, Lynn sent 3M Parkway's co-owners another letter, this time on BIC letterhead, indicating that BIC had prepared a budget, had conducted investigative work for the project, and was prepared to proceed with the preliminary work.  Finally, on March 19, 2005, Lynn sent 3M Parkway a revised project budget, estimating the total development work cost to be $3,297,188.

{¶ 3} On July 10, 2006, 3M Parkway and NVR agreed to terminate their lot-purchase agreement because 3M Parkway was "unable to achieve the rezoning of the Property to allow the development contemplated by the Agreement."  On July 27, 2006, BIC sent 3M Parkway an invoice.  The invoice sought $28,000 from 3M Parkway "for construction management services to date."  3M Parkway refused to pay BIC the $28,000.

{¶ 4} On March 1, 2007, BIC brought suit against 3M Parkway for $28,000 on the basis of breach of contract, accounting, and quantum meruit.  The parties conducted discovery, and 3M Parkway filed a motion for summary judgment on February 19, 2008.  BIC responded in opposition on March 28, 2008.  On June 13, 2008, the trial court granted 3M Parkway's motion for summary judgment.

{¶ 5} BIC now appeals from the trial court's judgment and raises one assignment of error for our review.

## II

### Assignment of Error

The trial court committed prejudicial error when it granted defendant's motion for summary judgment.

{¶ 6} In its sole assignment of error, BIC argues that the trial court erred in granting 3M Parkway's motion for summary judgment on BIC's quantum meruit claim. Specifically, BIC argues that genuine issues of material fact exist as to its quantum meruit claim because (1) the parties did not have an enforceable contract that would bar recovery under a quantum meruit theory and (2) 3M Parkway received a benefit from BIC's services. We agree.

{¶ 7} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293, 662 N.E.2d 264. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 9} In its motion for summary judgment, 3M Parkway simultaneously argued that it and BIC contractually agreed upon BIC's specific compensation, BIC

could not recover under the contract because a condition precedent in the contract failed, and BIC could not recover under a quantum meruit theory because that theory does not apply when an express contract exists. In support of its motion, 3M Parkway relied upon the March 23, 2004 and March 19, 2005 letters BIC sent to 3M Parkway. The March 23, 2004 letter provided as follows:

> In accordance with the request by * * * your counsel, * * * we have prepared preliminary budgets from September, 2003 to March, 2004. We also did preliminary investigative work for the project captioned above.

> Per our discussion, [BIC] agreed to do this work at no cost to you, with the understanding that, if the project is determined feasible, [BIC] would become your Construction Manager. As of the writing of this letter, all costs incurred will be billable.

> We will proceed with preliminary work, i.e., soil borings, wetlands, etc., in order to start this project and secure a building permit. We have agreed to hold our billing until the first construction draw, due to your current financial position.

> If our understanding of this agreement is different * * *, please respond in writing in seven days from the date of this letter. * * *

The March 19, 2005 letter was comprised of a revised budget. 3M Parkway argued that these letters constituted the parties' agreement.

{¶ 10} In its motion in opposition to summary judgment, BIC argued that the parties never had an express contract regarding BIC's construction-management services. Instead, BIC argued that the parties had a quasicontractual relationship, which entitled BIC to equitable relief. In support of its motion in opposition, BIC pointed to the same evidence as 3M Parkway, as well as to Lynn's July 8, 2003 letter, which was printed on Prete Builders, Inc., letterhead. BIC noted that the parties never agreed upon a contract price because Lynn quoted 3M Parkway multiple price terms during the course of their relationship. Lynn initially quoted 3M Parkway a total cost of $2,301,570, later indicated in a related contract for brush hogging with 3M Parkway that the total cost of the project would be $2,704,420, and finally quoted a total cost of $3,297,188. Lynn's initial quote and final quote also contained different contingency fees. While Lynn's initial letter quoted a contingency fee of seven percent, his final letter quoted a contingency fee of eight percent. Moreover, BIC pointed to the deposition testimony of one of 3M Parkway's co-owners, Gary Mintz, who testified that (1) BIC was never 3M Parkway's construction manager (2) BIC merely sent 3M Parkway proposals for its fees and duties, followed by the March 2004 letter indicating that "until the approvals and the project was determined feasible, David Lynn would not be our construction manager," (3) the project's feasibility depended upon the city's rezoning the project area, which never occurred, and (4) because the rezoning never occurred, 3M Parkway never hired

a construction-services manager.[1]  Mintz testified that BIC performed "some preparation work and miscellaneous stuff" for 3M Parkway, but did so only in "prepar[ation] to be construction manager."

{¶ 11} The trial court determined that the March 23, 2004 letter BIC sent to 3M Parkway constituted an express agreement between the parties.  The trial court understood the above-quoted letter to mean that (1) BIC prepared preliminary budgets and performed investigative work for 3M Parkway for free, (2) BIC would charge 3M Parkway only "for the 'costs' incurred by [BIC] in performing the preliminary work," (3) BIC agreed to perform these services for 3M Parkway in consideration for being named construction manager, and (4) BIC's being named construction manager depended upon the condition of the project being "determined feasible."  The trial court determined that 3M Parkway demonstrated that its project was infeasible because the city never agreed to rezone the project area.  Accordingly, the trial court held that BIC could not recover under a contract theory because any contractual obligation terminated after the condition precedent of project feasibility failed.

■■  {¶ 12} "This court will affirm a trial court's decision granting summary judgment on other grounds if the trial court's decision is legally correct."  *Fleck v. Hammer*, 9th Dist. No. 23533, 2007-Ohio-3998, 2007 WL 2255235, ¶ 12.  The elements necessary to form a contract " 'include an offer, acceptance, contractual capacity, consideration, * * * a manifestation of mutual assent and legality of object and of consideration.' "  *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414.  To constitute a valid contract, both parties to a contract must assent to its terms;  there must be a "meeting of the minds" of the parties with respect to the essential terms of the contract, which terms are also definite and certain.  *Franco v. Kemppel Homes, Inc.*, 9th Dist. No. 21769, 2004-Ohio-2663, 2004 WL 1160163, ¶ 22.

{¶ 13} Apart from the fact that BIC conceded in its motion in opposition that it did not have an express contract with 3M Parkway, our review of BIC's March

---

1.  While not a dispositive issue, see *Rallya v. A.J. Rose Mfg. Co.*, 9th Dist. No. 08CA009327, 2008-Ohio-6351, 2008 WL 5122116, this court notes its concern over the state of the record in this matter.  The record contains three separate depositions, which were filed in three separate, sealed envelopes.  Upon its review of the record, this court discovered that all three envelopes remained sealed.  Given that both parties repeatedly relied upon these depositions in support of their respective motions, this court is deeply troubled by the fact that the trial court apparently did not review these depositions.  This court is further troubled by the fact that this failure appears to be part of a pattern.  See *Rallya* at ¶ 54–56 (Whitmore, J., concurring in judgment only) (noting that this court discovered ten unopened depositions in a summary-judgment appeal from the same trial court).  Therefore, this court pauses to caution the trial court that though this court reviews an award of summary judgment de novo, it is the trial court's responsibility to review the evidence submitted by the parties.

23, 2004 letter leads us to conclude that the trial court erred in determining that the letter constituted an express agreement. Lynn quoted 3M Parkway three different estimates and two different contingency fees over the course of their correspondence. Furthermore, Lynn sent his initial quote to 3M Parkway on letterhead from Prete Builders, Inc., a different company to which he belonged. The letter made no mention of BIC. BIC's March 23, 2004 letter also did not contain any starting or ending dates for BIC's performance. While BIC and 3M Parkway entered into a formal, written contract for the "brush hogging" work that BIC performed, the record is devoid of any evidence that 3M Parkway ever entered into a written contract for BIC's other services. 3M Parkway's co-owner, Gary Mintz, testified in his deposition that BIC performed work only in "prepar[ation] to be construction manager." He further testified as follows:

It's my understanding that 3M Parkway and [BIC]—at the time the approvals were obtained by the City of North Ridgeville, 3M Parkway and [BIC] would have entered into a construction management contract and the payment schedule and the terms and conditions would have been outlined specifically there, outlining the exact amount and when those payments would be made. It never happened because the approvals were never made, thus the fee is not due and owed.

Mintz referred to Lynn's letters as "proposals" and to Lynn's total cost estimates as "proposed budget[s]." Accordingly, by Mintz's own deposition testimony, even 3M Parkway did not understand the parties to have a contractual relationship.

{¶ 14} Based on the fact that the parties never assented to definite and certain terms of a contract and the fact that both parties indicated that they did not believe they had an express contract, the trial court erred in determining that BIC's March 23, 2004 letter constituted the agreement of the parties. Because the parties did not have a contract, however, the trial court correctly concluded that BIC could not recover pursuant to a contractual theory. Consequently, this portion of the trial court's opinion is correct, albeit on different legal grounds. *Fleck*, 2007-Ohio-3998, 2007 WL 2255235, ¶ 12.

{¶ 15} In its motion for summary judgment, 3M Parkway also argued that BIC could not recover $28,000 under an unjust-enrichment claim because that amount represented a "pro rata portion (12.5%) of [BIC's] construction management fee" under the parties' contract. Because an express agreement covered those services, 3M Parkway argued, the doctrine of quantum meruit could not apply. The trial court agreed with 3M Parkway's analysis and determined that BIC could not recover under a quantum meruit theory because "[t]he doctrines of unjust enrichment and quantum meruit are 'inapplicable if an express agreement [March 23, 2004 letter] existed concerning the services for which compensation is sought.' *Pawlus v. Bartug [Bartrug]* (1996), 109 Ohio App.3d 796, 800 [673 N.E.2d 188]."

{¶ 16} "The elements of unjust enrichment and quantum-meruit are identical." *Coyne v. Hodge Const., Inc.*, 9th Dist. No. 03CA0061–M, 2004-Ohio-727, 2004 WL 298688, ¶ 5, fn. 3. "A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Chef Italiano v. Crucible Dev. Corp.*, 9th Dist. No. 22415, 2005-Ohio-4254, 2005 WL 1963027, at ¶ 26. Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923. "When there is an express contract related to the same subject matter, * * * a claim for unjust enrichment cannot be sustained." *Wochna v. Mancino*, 9th Dist. No. 07CA0059–M, 2008-Ohio-996, 2008 WL 623731, ¶ 18.

{¶ 17} While it is true that a party may not recover for the same services under both a contractual claim and a claim for quantum meruit, a party is not barred from seeking alternative theories and recovering under a quantum meruit theory if his contractual claim fails. See *Zeck v. Sokol*, 9th Dist. No. 07CA0030–M, 2008-Ohio-727, 2008 WL 495481, ¶ 13–14. This court has determined that BIC and 3M Parkway did not have an express contract. Accordingly, the trial court erred in barring BIC's claim for unjust enrichment on the basis that an express contract existed. See id. BIC presented evidence that it performed various services on 3M Parkway's behalf. Mintz did not deny that BIC performed these services. Instead, Mintz testified that "[i]t was [his] understanding that [Lynn's] construction management time would be charged and due only after it was feasible to pursue the project by the City of North Ridgeville giving the zoning approval." 3M Parkway refused to pay BIC because it believed that BIC was entitled to compensation only in the event that 3M Parkway's project was feasible. Yet, the terms of the parties' purported agreement have no bearing upon BIC's ability to recover from 3M Parkway for any benefit that it conferred upon 3M Parkway and that 3M Parkway knowingly retained. The record contains genuine issues of material fact as to BIC's claim for unjust enrichment. Accordingly, the trial court erred in granting 3M Parkway summary judgment on BIC's unjust-enrichment claim. BIC's sole assignment of error has merit.

III

{¶ 18} BIC's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed
and cause remanded.

CARR, J., concurs.

MOORE, P.J., dissents.

MOORE, Presiding Judge, dissenting.

{¶ 19} I would find that the trial court correctly determined that the parties had an enforceable contract that barred BIC's recovery under the unjust-enrichment theory. Accordingly, I respectfully dissent from the majority's decision that the trial court erred in granting 3M Parkway's motion for summary judgment.

{¶ 20} This matter involves a classic contract with a condition precedent. A review of BIC's complaint reflects that it believed, as of the filing of the action, that the parties had a "contractual arrangement." In its complaint, BIC alleged a breach-of-contract action. In paragraph 11 of the complaint, BIC referred to the parties' "contractual arrangement" and stated that 3M Parkway was "obligated in contract." Further, in its March 23, 2004 letter, drafted by David Lynn, Lynn specifically designated the correspondence as an "agreement." In his deposition, Lynn testified that the $28,000 he claims to be owed arose out of obligations set forth in the March 23, 2004 letter. Thus, I would find that this "agreement" governs the subject matter of this dispute.

{¶ 21} The fact that the terms of the parties' agreement would have to be specifically outlined at a later date does not invalidate the agreement. This was a multimillion dollar contract. The March 23, 2004 letter specifically stated that it concerned "preliminary" work. Any rational person would expect that more than four short paragraphs would be necessary to capture all the terms of the agreement as the construction unfolded. The lack of specific terms regarding the additional work required to complete this complex project does nothing to eviscerate the fact that an agreement was reached.

{¶ 22} The condition, as set forth by BIC in its March 23, 2004 letter, was the feasibility of the project. This condition was never met. BIC's arguments regarding the amorphous nature of the term "feasibility" are not persuasive. BIC chose this term and chose not to further define it. "Feasible" is defined as "capable of being done or carried out." Webster's Collegiate Dictionary (2005) 458. "Infeasible" is defined as "impracticable." Webster's Collegiate Dictionary (2005) 639. Certainly the lack of zoning or some exorbitant unanticipated costs associated with installing sewers would fall within the realm of impracticability.

{¶ 23} BIC used the terms "costs," "investigative work," and "preliminary work" in its letter. Professional services, i.e., the investigative work and preliminary work, are completely different in nature from costs. BIC stated in its letter that it would not charge 3M Parkway for this preliminary investigative work, but

that 3M Parkway would be responsible for "all costs incurred." "Under the canon of statutory construction commonly referred to as *ejusdem generis* (literally, 'of the same kind'), whenever words of general meaning follow the enumeration of a particular class, then the general words are to be construed as limited to those things which pertain to the particularly enumerated class." *Akron Home Med. Servs., Inc. v. Lindley* (1986), 25 Ohio St.3d 107, 109, 25 OBR 155, 495 N.E.2d 417.

{¶ 24} Moreover, in his deposition, Lynn agreed that there is a difference between monies paid for time and "costs." He testified that the "costs incurred" were "the soil boring, the environmental, the wetlands, the brush hogging, the surveys * * * the insurance on the project and the engineering fees." Lynn stated, "Those are all direct project costs and have nothing to do with my eight percent fee." In his deposition, Lynn continued to draw a distinction between "direct job costs" and the fees for his services. Despite acknowledging this distinction, he admitted that he did not state in the March 23, 2004 letter that his time would be billable as a cost.

{¶ 25} Finally, if Lynn believed that "costs" should also encompass his time, he could have more specifically defined this term in his March 23, 2004 letter. He did not. 3M Parkway clearly understood this letter as requiring it to reimburse BIC for its costs. Lynn testified that 3M Parkway has paid all of the direct costs billed to it, but none of the fees for Lynn's time. Lynn clearly expended his time and energy at the front end of this relationship, in the hopes that he would earn significantly more, i.e., a percentage of the total construction contract, if he became the construction manager. This was a calculated business risk that he took when he expressly "agreed to do this [preliminary investigative] work at no cost to you, with the understanding that, if the project is determined feasible, [BIC] will become your Construction Manager."

{¶ 26} Because I would find that the parties' March 23, 2004 agreement governs this matter, I would not address BIC's unjust-enrichment claim. See *Pawlus v. Bartrug* (1996), 109 Ohio App.3d 796, 800, 673 N.E.2d 188 (finding the doctrine of unjust enrichment inapplicable when an express agreement exists governing the services for which compensation is sought). I would affirm.