[Cite as *Jochum v. Howard Hanna Co.*, 2020-Ohio-6676.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL JOCHUM, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2020-L-077** |
| HOWARD HANNA COMPANY aka HOWARD HANNA REAL ESTATE SERVICES, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2019 CV 000780.

Judgment: Affirmed.

*Michael P. Harvey*, Michael P. Harvey Co., L.P.A., 311 Northcliff Drive, Rocky River, Ohio 44116 (For Plaintiff-Appellant).

*Tracey S. McGurk*, Mansour Gavin LPA, North Point Tower, 1001 Lakeside Avenue, Suite 1400, Cleveland, Ohio 44114 (For Defendants-Appellees).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Michael Jochum, appeals the trial court's decision granting appellees, Howard Hanna Company, John DeSantis, and Lisa DeMario summary judgment. We affirm.

{¶2} Jochum purchased a new home in 2015. John DeSantis was the seller's agent, and Lisa DeMario was Jochum's agent. DeSantis and Demario were both Howard Hanna real estate agents at the time. Due to ongoing issues with the sump pump and

footer drains, Jochum learned his home was built on a salt dumpsite and claims that salt removal is necessary to remedy the issues and claims removal will cost more than the value of his home.

{¶3}  Jochum filed suit against Howard Hanna Company, John DeSantis, and Lisa DeMario in May 2019 alleging seven counts.  The sellers are not parties to this litigation; Jochum sued them separately.  Each of Jochum's claims is based on the same factual allegations, i.e., that the Howard Hanna agents DeSantis and/or DeMario knew or should have known that the home was located on a salt dump and that they intentionally, recklessly, or negligently failed to alert him.  He claims they did not tell him in order to gain the commission from the sale and that DeSantis and/or DeMario likewise concealed or failed to advise him about the Howard Hanna money back guarantee program so he would not use it.

{¶4}  After discovery was complete, Howard Hanna, DeSantis, and DeMario moved for summary judgment, which Jochum opposed.  Jochum attached his affidavit to his opposition.  In response, Howard Hanna, DeSantis, and DeMario moved to strike the affidavit as conflicting with Jochum's deposition testimony.  The trial court addressed both motions in one judgment.  In granting the motion to strike in part and rendering summary judgment in appellees' favor, the trial court found in part:

{¶5}  "[D]efendants' objections to the plaintiff's affidavit are well taken.  Parts of it are not based on personal knowledge, are legal conclusions, would be considered hearsay at trial, and contradict his deposition testimony.  In addition, none of the exhibits attached * * * are properly authenticated.  However, * * * the court shall not order the affidavit or exhibits struck.  Instead, it shall not consider the plaintiff's exhibits and only

2

consider those parts of the affidavit that comply with the Civil Rules. And it shall specify when if finds that the affidavit cannot be used to create a genuine issue of material fact."

{¶6} Jochum states he is raising one assignment of error; however, his brief identifies six separate arguments labeled A through F, which allege:

{¶7} "A. The trial lower court applied an incorrect standard to grant summary judgment to all Defendants."

{¶8} "B. The appellant sufficiently pled the allegations of fraud, fraudulent misrepresentation, and non-disclosure in counts one and two of the complaint.

{¶9} "C. The defendants are not entitled to summary judgment on negligent misrepresentation [count three].

{¶10} "D. The agents were not entitled to summary judgment on count five, breach of fiduciary duty.

{¶11} "E. The agents were not entitled to summary judgment on the unjust enrichment and quantum meruit claims in count seven.

{¶12} "F. Howard Hanna and its agents are not entitled to summary judgment on count six, breach of contract."

{¶13} We review decisions awarding summary judgment de novo and independently review the trial court's decision without deference pursuant to the standards in Civ.R. 56(C). *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993); *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 191, 699 N.E.2d 534 (8th Dist.1997).

{¶14} "Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as

a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion adverse to the nonmoving party. *Holliman v. Allstate Ins. Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id."* *Allen v. 5125 Peno, LLC*, 2017-Ohio-8941, 101 N.E.3d 484, ¶ 6 (11th Dist.).

{¶15} Not every factual dispute precludes summary judgment; only disputes as to material facts that may affect the outcome preclude summary judgment. *Bender v. Logan*, 2016-Ohio-5317, 76 N.E.3d 336, ¶ 49 (4th Dist.), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶16} Moreover, "'[m]ere speculation and unsupported conclusory assertions are not sufficient' to meet the nonmovant's reciprocal burden under Civ.R. 56(E) to withstand summary judgment." *Bank of New York Mellon v. Bobo*, 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13 (4th Dist.), quoting *Loveday v. Essential Heating Cooling & Refrig., Inc.,* 4th Dist. Gallia No. 08CA4, 2008-Ohio-4756, ¶ 9.

{¶17} As stated, each of Jochum's causes of action relies on the same facts. He claims that the Howard Hanna agents DeSantis and DeMario knew or should have known about the salt under his property and either intentionally concealed their knowledge or were reckless or negligent in not learning about the condition and telling him about it. And as a consequence, Jochum claims he purchased property that is essentially worthless.

4

Each count also contends that DeSantis and/or DeMario concealed or were negligent or reckless in failing to advise him about the Howard Hanna money back guarantee program so he would not use it once he discovered the problems with his new home. Contrary to his arguments, however, the evidence does not support his theories of recovery.

{¶18} Jochum testified in his deposition that he made offers on two other homes with DeMario as his agent. The first offer had a higher bidder and the second sale fell through because there was an issue identified during the inspection that the seller was not willing to correct. Jochum's third purchase offer was for the instant property and was accepted.

{¶19} Jochum visited this property twice with DeMario before making his offer. The sellers used another Howard Hanna agent, DeSantis, as their listing agent. DeSantis was the leader of DeMario's local Howard Hanna group. Jochum never spoke with or met DeSantis before the sale.

{¶20} Jochum received two residential property disclosure forms before the inspection. He initialed each document. The second one states under "Other Known Material Defects: Footer drains need annual cleaning due to calcium carbonate build up. Sump pump should be cleaned regularly." Jochum was present for the inspection and had the disclosures with him but does not recall if he showed the disclosures to the inspector, whom he trusted.

{¶21} Jochum signed most of the real estate forms and agreements electronically using email on his phone. He denied writing additional information or crossing out the money back guarantee in his purchase offers. He also said that DeMario did not have a conversation with him about the money back guarantee. However, he acknowledged that

5

the guarantee was listed in the agreement; that it was crossed out; and that he was signing a contract.

{¶22} He states in part in his affidavit that the Howard Hanna buyback program "should have been applicable to me * * * but that program was not offered to me." He also says that neither agent disclosed the program to him, but had he known about it, "I would have availed myself of it, but I did not know about it."

{¶23} Jochum moved into the property in 2015, and in December 2015 he noticed that the sump was filled with a white substance. He called a plumber who cleaned it out, but the substance reappeared requiring him to contact the plumber again in March 2016. He had a new sump pump installed on the second visit, and about seven months later, the problem re-occurred. Jochum began cleaning it out himself about every three months and flushing the sump with clean tap water daily.

{¶24} In approximately February 2016, a neighbor told him that the problem was salt under his home from a company's illegal dumping on the property. She said the EPA had investigated the issue.

{¶25} Jochum then hired another company to clean out the home's footer drains. He also secured an estimate to have the salt removed from the property, and the excavator told him that it would cost more than the value of his home. Jochum sued the sellers for fraud and was awarded $5,000 in damages. He claims the damages award was low because his prior attorney failed to secure an expert.

{¶26} DeSantis testified that he learned about the salt problems at Jochum's home after Jochum sued him. DeSantis said that neither he nor DeMario knew about the salt dumping at the Mentor Marsh, which is about five miles from their office.

6

{¶27} DeSantis was part owner of the title company who helped Jochum close on the sale of this home, but DeSantis no longer owns an interest in it. The sellers never told him about the salt problem.

{¶28} DeSantis also explained that his Howard Hanna group was not eligible for the Howard Hanna money back guarantee program. Also, DeSantis pointed out there are more conditions to the program, including the buyer paying one percent. But the seller has to purchase the option or offer it for the buyer to be eligible, which did not happen here. DeSantis said they offered their own guaranteed sale program to sellers.

{¶29} DeMario, Jochum's agent, likewise confirmed that she did not know about the salt under the home before Jochum purchased it.

{¶30} DeMario testified that DeSantis' group did not qualify for the Howard Hanna guarantee based on their commission structure. They did not qualify based on Howard Hanna guidelines. And had her group qualified for the program, the seller would first have to elect it on the first day that the home is listed for sale. "A week later, a buyer comes to write an offer and asks about it - - even if the buyer would want the program, if the seller never elected it at the time of listing, the buyer can't go back and get it." She said it is not a popular program because if the seller offers it, then the buyer can elect it as well, but the buyer is required to pay one percent of the purchase price.

{¶31} She recalls explaining the program to Jochum when they wrote his first purchase offer that did not go through, but because it was not available, she did not offer it to him on this property. DeMario recalls reviewing every paragraph with Jochum when completing his first purchase offer. But with his subsequent purchase offers, including

7

this one, Jochum declined her offer to meet and review the documents. Instead, he electronically signed the purchase agreement.

{¶32} She also testified that their DeSantis group at the time had their own program, which was a guaranteed sale program. She also explained that the DeSantis program did not apply to this transaction because the "buyer has to have a house to sell * * *. Mr. Jochum did not have a house to sell. * * * [I]t works for a buyer who has a property to sell that does not have enough equity in their home. And he didn't have a property to sell. * * * so it didn't apply to him." She does not recall ever discussing this option with him since it was inappicable.

{¶33} Jochum challenges the trial court's summary judgment decision on all claims, except count four alleging professional negligence and promissory fraud. Thus, we do not address these counts here.

{¶34} Contrary to his allegations, Jochum testifies at his deposition that he has no knowledge that either DeSantis or DeMario knew about the salt issue on this property before he purchased the home. Jochum fails to identify any evidence establishing or even tending to show that either DeMario or DeSantis knew of the salt problems before he purchased the home. And as for the money back guarantee program, Jochum does not show he was eligible for the program or that either DeMario or DeSantis concealed it from him. They testified that it was not offered to Jochum because it was not available to their realty group due to their commission structure. Moreover, the seller would have to first elect the program, which did not happen here. Further, the fact that the someone other than Jochum crossed out the offer on his purchase offer is of no consequence since Jochum admits to signing the purchase offer.

8

{¶35} Jochum's argument B contends the court erred in awarding summary judgment for his fraud and fraudulent misrepresentation/non-disclosure claims set forth in counts one and two of his complaint.

{¶36} "Fraud has six elements, all of which must be met: '(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, 134 N.E.3d 1185, quoting *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

{¶37} Here, there is no evidence that either DeSantis or DeMario made a representation regarding the home or concealed facts from Jochum about the sale where there was a duty to disclose. DeMario's and DeSantis' retained economic gain from Jochum's purchase of this home does not establish fraud. He has proven no wrongdoing or failure to act where they had a duty to do so, and as such, summary judgment on this claim is warranted.

{¶38} Jochum's argument labeled C challenges summary judgment on his claim asserting negligent misrepresentation, identified in count three of his complaint.

{¶39} "The elements of negligent misrepresentation are (1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance

9

of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 837–838. A negligent misrepresentation claim does not lie for omissions: there must be an affirmative false statement.W *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 149, 684 N.E.2d 1261, 1269; *Zuber v. Ohio Dept. of Ins.* (1986), 34 Ohio App.3d 42, 45-46, 516 N.E.2d 244, 246-248." *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 103-04, 742 N.E.2d 1198 (10th Dist.2000).

{¶40} Because Jochum presents no evidence that ether DeSantis or DeMario supplied him with false information regarding his purchase of the home, summary judgment is proper on this claim.

{¶41} Jochum contends in his D argument that the court erred in granting summary judgment on his breach of fiduciary duty claim asserted in count five of his complaint.

{¶42} "The essential elements of a claim of breach of fiduciary duty are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury resulting proximately therefrom. *D & H Autobath,* 2012-Ohio-5845, 983 N.E.2d 891, at ¶ 28." *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, 34 N.E.3d 530, ¶ 27 (12th Dist.).

{¶43} Here, there is no evidence even tending to show that DeMario or DeSantis failed to observe a duty owed to Jochum before, during, or after the sale. Thus, this argument lacks merit.

{¶44} Jochum's argument E claims the court erroneously granted summary judgment on his unjust enrichment and quantum meruit claims asserted in count seven of his complaint.

{¶45} "'The elements of unjust enrichment and quantum-meruit are identical.' *Coyne v. Hodge Const., Inc.,* 9th Dist. No. 03CA0061-M, 2004-Ohio-727, 2004 WL 298688, ¶ 5, fn. 3. 'A successful claim of unjust enrichment requires * * *: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment.' *Chef Italiano v. Crucible Dev. Corp.,* 9th Dist. No. 22415, 2005-Ohio-4254, 2005 WL 1963027, at ¶ 26. Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.' *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923. 'When there is an express contract related to the same subject matter, * * * a claim for unjust enrichment cannot be sustained.' *Wochna v. Mancino,* 9th Dist. No. 07CA0059-M, 2008-Ohio-996, 2008 WL 623731, ¶ 18." *Bldg. Industry Consultants, Inc. v. 3M Parkway, Inc.,* 182 Ohio App.3d 39, 2009-Ohio-1910, 911 N.E.2d 356, ¶ 16 (9th Dist.).

{¶46} Here, Jochum fails to direct our attention to anything evidencing that it is unjust for DeMario and DeSantis to retain their commissions from the sale of this home. Although it is unfortunate that Jochum purchased a home plagued with problems, he does not show that his purchase was the result of any wrongdoing by appellees. Thus, this argument lacks merit.

{¶47} Jochum's F argument claims that Howard Hanna and its agents were not entitled to summary judgment on count six, breach of contract.

{¶48} To assert a successful breach of contract claim, one must prove: "(1) the existence of a contract; (2) performance on the part of appellant; (3) breach by appellees; and (4) damages. *Huffman v. Kazak Brothers,* 11th Dist. No.2000–L–152, 2002 Ohio App. LEXIS 1660, *11 (Apr. 12, 2002), citing *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (1994)." *McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, ¶ 23.

{¶49} There is no allegation or evidence that Jochum was in a contractual relationship with DeSantis. Thus, his breach of contract claim against DeSantis fails. Moreover, Jochum does not come forward with any evidence showing that DeMario breached any terms of their contract, and thus this argument lacks merit as well.

{¶50} Finally, we disagree with Jochum's argument A alleging the court applied an incorrect standard when rendering summary judgment. The court addresses Jochum's affidavit and the motion to strike in detail and separately addresses each of his claims and the lack of evidence supporting each. And consistent with the trial court's analysis and conclusions, we agree that Jochum's affidavit attached to his opposition fails to create an issue of fact for trial. While the affidavit sets forth Jochum's conclusory beliefs that appellees committed wrongdoing to his detriment, he does not identify facts establishing concealment, negligence, fraud, or nondisclosure by Howard Hanna, DeMario, or DeSantis. Thus, this argument lacks merit.

{¶51} Jochum's theory that these two real estate agents were acting in concert to sell him a defective property is unestablished. If there is evidence to support his claims, he does not identify it, and we do not see it in the record. The party contesting a motion for summary judgment must set forth specific facts showing there are genuine issues for

trial. Civ.R. 56(E). Because his theories of liability are premised on unconfirmed conjecture, Jochum fails to meet his reciprocal burden of establishing a genuine issue of fact. *Zoldan v. Chaffee*, 2014-Ohio-5472, 25 N.E.3d 451, ¶ 28 (11th Dist.); *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 357-358, 609 N.E.2d 216 (6th Dist.1992). Because the factual predicate for Jochum's causes of action are unestablished, summary judgment is proper.

{¶52} Accordingly, his assigned errors lack merit, and the trial court's judgment is affirmed.


TIMOTHY P. CANNON, P.J.,

MATT LYNCH, J.,

concur.