[Cite as *Lucas v. Eclipse Cos., L.L.C.*, 2023-Ohio-4728.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

DAVID M. LUCAS et al.,

Plaintiffs-Appellants,

v.

ECLIPSE COMPANIES, LLC,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MO 0007**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2020-428

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed in Part, Reversed in Part, Remand.

---

*Atty. Joshua D. Miller*, Toriseva Law, for Plaintiffs-Appellants and

*Atty. Matthew P. Mullen*, *Atty. John P. Maxwell, Atty. Terry J. Evans,* Krugliak, Wilkins, Griffiths, & Dougherty Co., L.P.A., for Defendant-Appellee.

Dated:  December 18, 2023

**Robb, J.**

**{¶1}** Appellants, David and Barbara Lucas and Presutti Estates, LLC, appeal the February 2023 judgment granting summary judgment in favor of Appellee, Eclipse Companies, LLC. Appellants raise five arguments on appeal.

**{¶2}** For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

<u>Statement of the Case</u>

**{¶3}** Appellants owned a private road in their neighborhood. Appellants entered an agreement with Appellee allowing it ingress and egress during the construction of a nearby project. In exchange, Appellee agreed to do certain work for Appellants.

**{¶4}** Appellants filed suit in July of 2020 in the Belmont County Court of Common Pleas. Their case was transferred to Monroe County in November of 2020.

**{¶5}** The complaint alleges David and Barbara Lucas are the sole members of Presutti Estates, LLC. In August of 2019, David Lucas on behalf of Presutti entered a property use agreement with Appellee authorizing it ingress and egress on Appellants' property to work on a local construction project. In exchange, Appellee was to move certain fill dirt and rough grade an area near a detached garage. The agreement did not include the exchange of money. (July 9, 2020 Complaint.)

**{¶6}** The contract states in its entirety:

Property Use Agreement

I DAVID M. LUCAS property owner or authorized representative for Presutti Estates, LLC 67120 Veto Drive Bellaire, Ohio * * * agree to allow Eclipse Co., LLC to have ingress and egress to work on the project known as ODOT 194016 BEL-470-PARK & RIDE. In addition to such access, I hereby authorize the use of said property for laydown, borrow of embankment, waste disposal, and material stockpiling. Both parties agree that the Ohio Department of Transportation (Department) is not a party to this agreement, and the property owner and Eclipse Co., LLC will hold harmless the department from claims that may arise from this agreement.

For said consideration, Eclipse Co., LLC will grade for positive drainage, & compact on-site fill within immediate area of detached garage. Minimal grading changes will be made to this area.

Embankment will be taken from adjacent drive access road & area within will be rough graded to achieve positive drainage. Permanent seeding is not inclusive of this agreement.

In consideration for the above agreement there is no cost to Eclipse Co., LLC.

This agreement is signed by David M. Lucas, who is identified next to his signature line as the "Property Owner." (Complaint Exhibit G.)

**{¶7}** Appellants further alleged Presutti owned the paved road that was being used for the project per the agreement. In August of 2019, David and Barbara Lucas were out of town when they were contacted by a neighbor, who advised them their road had been damaged by heavy equipment. Upon raising the issue with Eclipse, the foreman ensured them the road would be repaired. Eventually, Appellants were advised via this same foreman that their road would <u>not</u> be repaired and that they should have known the road would be damaged from the construction use. Appellants allegedly incurred $7,962.52 to patch and fill the road. However, they claim these repairs were temporary and the cost to restore the road to its like-new condition would be $69,500. Appellants claim they were not informed about the size of the construction vehicles that would be traversing the road or the tons of materials the vehicles would be carrying, and if they had been so informed, they would not have agreed to allow Appellee to use their newly refinished road. (July 9, 2020 Complaint.)

**{¶8}** Their complaint asserted five causes of action, including negligence, negligence per se, willful damage to property, unjust enrichment, and breach of implied warranty.

**{¶9}** Following the exchange of discovery, Appellee moved for summary judgment. As grounds, Appellee first alleged that Appellants David and Barbara Lucas lacked standing to sue because the damage was caused to the road owned solely by Presutti Estates, LLC, not the Lucases. Second, Appellee claimed Appellants' tort claims, i.e., negligence, negligence per se, and willful damage to property, were barred as a matter of law since the claims arose from the parties' contract. Appellee also alleged Appellants were barred from pursuing an unjust enrichment claim because the parties'

written contract governed.  Fourth, Appellee urged the court to conclude that Appellants' cause of action for breach of the implied warranty of suitability fails as a matter of law since Ohio does not recognize such a claim.  Finally, Appellee claimed that Appellants' causes of action likewise failed because they sought recovery of future damage to property they no longer own, and Appellants no longer have a duty to repair the road. (September 6, 2022 Motion.)

{¶10}  Appellants opposed, and Appellees filed a reply in support of their motion. (January 3, 2023 Response & January 13, 2023.)

{¶11}  Appellant David Lucas testified that he, his wife, and sister-in-law owned the property when the road was originally installed.  He does not remember the precise year, but it was before 2013.  The road was installed by an oil and gas company to reach an oil well.  It was a hard road surface at the time.  He described it as a hard surface, but gravel.  Then in 2013, they built a home on the road.  There are nine parcels in their development.  They own one plus an outlot.  Thereafter, he and his wife made improvements to the road.  They paved the road with asphalt for their personal use from State Route 214 to his detached garage, where he stored his collection of classic cars and motorcycles.  They paid about $60,000 for the paving in 2018.

{¶12}  Their road very recently became a township road.  David agreed that any future repairs to the road were the responsibility of the township, and he had no say in them nor will he be obligated to pay for the repairs or upkeep of the road, now known as Veto Road.  Before the township would agree and take ownership of the road, they had to finish the cul-de-sac and they incurred some engineering fees and a recorder fee. (David Lucas Depo. 1-24.)

{¶13}  Regarding the contract here, David was approached by a representative of Eclipse, who informed him the company wanted to buy fill dirt from a vacant lot.  The lot was owned by another individual who agreed and sold Eclipse dirt.  David had Eclipse place some fill dirt near his detached garage, but he said it fell away that winter.   (David Lucas Depo. 24-31.)

{¶14}  When asked about the agreement to use his road, David said "I gave them permission to use the road, but I did not give them permission to tear up the road." (David Lucas Depo. 32.)  He agreed he signed the written agreement, but he never got a signed copy from Eclipse.  He signed it on behalf of his company Presutti Estates.  He said no

one told him about the type of equipment that was going to be used on the road or that damage may occur. He said there were no conversations about these issues before he agreed and signed the contract. In exchange for the use of the road, David said he received the fill dirt around his garage. He was not paid money. He said the fill dirt was from the neighbor's lot, which they got for free and moved it to David's lot. (David Lucas Depo. 32-38.)

{¶15} Sometime later, while he and his wife were out of the state, he was contacted by a neighbor who was complaining about the damage Eclipse caused to the road. The neighbor said the road was damaged to the point where his son could not drive his car on it. They sent David photographs of the damage. He was told there were three large dump trucks working around the clock and using the road. (David Lucas Depo. 38.)

{¶16} In response, David called his Eclipse contact Ralph to get the road repaired. According to David, Eclipse temporarily fixed the road when he was still out of town by adding "junk fill" and leveling it so the residents could use it. This made the road passable at the time. David said they had several conversations by phone, and Ralph indicated he would talk with the Eclipse owner to fix the road. When the project was nearing completion, Ralph told David his boss had told him they were not going to fix the road. He also said David "should have known that they would tear up the road." That was the last time David spoke with an Eclipse representative. (David Lucas Depo. 40-42.)

{¶17} David explained how the "whole roadway continued breaking up because the roadway was cracked where they constantly drove out to the main road." He hired a company to patch it, but a portion was unfixable. He said the road was "totally destroyed" in areas. David said he and his son also personally used their time and labor to attempt to remedy the damage. They put gravel down and spread it. He purchased gravel twice and used some he already owned. He paid a paving company $5,500 in December of 2019. He had Pike's Paving patch the road with asphalt two to three times. Part of the road had to be turned into a gravel road because the damage was so bad. They never had the whole roadway resurfaced before the township took ownership of the road. (David Lucas Depo. 46-51.)

{¶18} The poor condition of the road surface has prevented him from using his collectible cars and motorcycles that he stores in the detached garage. He said there is "extreme dirt" where there was none before, and he had to store one car elsewhere due

to the gravel roadway. He was forced to rent a garage elsewhere. At one point, the damage was so bad that they would not deliver the mail, and the residents had to go and pick up their mail. (David Lucas Depo. 57.)

{¶19} The trial court granted Appellee's motion and entered summary judgment in its favor on all claims. (February 1, 2023 Judgment.) The trial court found first that David and Barbara Lucas lacked standing since the damage alleged was to property owned by their company, and as such, the claims belonged to their company. The trial court also found the claims for negligence, negligence per se and willful damage to property failed as a matter of law because they are tort claims, and the parties' dispute arises via a contract. The court likewise found the claim for breach of implied warranty of suitability failed because Ohio courts do not recognize such a cause of action. Moreover, it held because Presutti no longer owned the road in question, the court found they have no duty to make future repairs, and this claim fails as a matter of law. (February 1, 2023 Judgment.)

{¶20} Appellants raise six assignments of error.

### Assignments of Error No. One & Two: Negligence Claims

{¶21} Appellants' first and second assignments of error assert:

"[1.] The Trial Court erred when it dismissed the Plaintiffs' claims for negligence based on the existence of a contract existing between the parties."

"[2.] The Trial Court erred when it dismissed the Plaintiffs' claims for negligence as a claim for negligence is the proper cause of action to bring when a party to the contract damages property that is not the subject matter of the contract."

{¶22} Appellee's summary judgment motion alleged Appellants' tort claims, negligence, negligence per se, and willful damage to property, are barred because their claims arise from the parties' contract. Thus, they could only allege a breach of contract claim. The trial court agreed and granted summary judgment on this basis.

{¶23} Appellants contend the trial court's holding in this regard is an error of law, and their negligence, negligence per se, and willful damage to property claims should be reinstated. For the following reasons, we agree.

{¶24} As Appellants allege, the trial court held in part a breach of contract does not create a tort claim, and here, Appellants' tort claims "all arose out of the Agreement for Eclipse to use Veto Drive." It also held, "any claims arising from Eclipse's alleged

misuse of the road, could only arise through the contract it had with Presutti. Therefore, * * * any claims sounding in tort fail as a matter of law." (February 1, 2023 Judgment.) For this reason, the trial court held Appellants' claims for negligence, negligence per se, and willful damage to property failed as a matter of law. (February 1, 2023 Judgment.)

{¶25} Pursuant to Civ.R. 56(C), summary judgment should be granted when reasonable minds could reach but one conclusion and that conclusion is adverse to the nonmoving party. The moving party has the burden of showing that no issue exists as to any material fact. *State v. Licsak*, 41 Ohio App.2d 165, 324 N.E.2d 589 (1974); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus (1988).

{¶26} Once the moving party meets his burden, the opposing party may not rely on the allegations in his pleadings, but must set forth facts showing there is a genuine issue and produce evidence on issues that the party has the burden of proving at trial. Civ.R. 56(E); *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining a motion for summary judgment, the trial court will construe the evidence most strongly in favor of the nonmoving party and grant summary judgment where that party fails to make a showing sufficient to establish the existence of an essential element upon which that party bears the burden of production. *Celotex,* at 322, 106 S.Ct. 2548.

{¶27} Appellate courts review decisions awarding summary judgment de novo. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 191, 699 N.E.2d 534 (8th Dist.1997). We review the trial court's decision independently and without deference, pursuant to the standards in Civ.R. 56(C). *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶28} Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion adverse to the nonmoving party. *Holliman v. Allstate Ins. Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 29-293, 662 N.E.2d 264 (1996). If the movant

meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.*

**{¶29}** Here, the trial court decided a matter of law, i.e., Appellants' tort claims are barred since they arise from and are factually intertwined with the parties' contract. We review issues of law de novo. *Christ Holdings, L.L.C. v. Schleappi*, 2016-Ohio-4664, 67 N.E.3d 47, ¶ 34 (7th Dist).

**{¶30}** "Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." *Schwartz v. Bank One,* 84 Ohio App.3d 806, 810, 619 N.E.2d 10 (4th Dist.1992). A breach of contract does not create a tort claim, and a tort claim based on the same conduct supporting a breach of contract claim may exist only if the breaching party had a duty existing independent of the contract, i.e., a duty that exists even if there were no contractual agreement. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983); *425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.*, 186 Ohio App.3d 214, 2010-Ohio-412, 927 N.E.2d 46, ¶ 51 (10th Dist.). Distinguishing between the two can be taxing.

> Generally, when a contract action exists against a defendant, the plaintiff cannot maintain a tort claim based upon the same underlying actions as the breach of contract claim unless the defendant also breached a duty owed independent of the contract. *Lucarell v. Nationwide,* 2015-Ohio-5286, 44 N.E.3d 319, ¶ 87. However, a tort claim based upon the same actions as those upon which a breach of contract claim is based will exist independently of the contract action if the breaching party also breaches a duty owed separately from that created by the contract. *Id.* In other words, the tort claim must be based on a duty that would be owed even if no contract existed. *Id.*

*Raze Internatl., Inc. v. Southeastern Equip. Co.*, 2016-Ohio-5700, 69 N.E.3d 1274, ¶ 62 (7th Dist.).

**{¶31}** The fact that the parties have a contract referencing and allowing Appellee ingress and egress is not determinative. Instead, we must examine the nature of the duty underlying the claim or the nature of the grievance, as well as the nature of damages sought. *Id.*

{¶32} Appellants' cause of action against Appellee is not for Appellee's failure to perform its obligations set forth under the contract. There is no claim Appellee failed to place the fill dirt as required or Appellee was negligent in its contractual duty to place the fill dirt around the detached garage. If this were the nature of Appellants' claims, then Appellants would have a cause of action for breach of contract and the failure to perform the contractual obligations or services in a workmanlike manner. If this were the nature of their claim, Appellants would be seeking, as damages for the breach of contract, the amount of money required to remedy the alleged negligent work. This is not the case.

{¶33} Instead, Appellants' claims in this assignment of error assert Appellee breached a duty sounding in tort, independent of those flowing from the contract, i.e., the duty not to damage another's property. "Whenever and wherever one person comes into proximity to the person or property of another, a duty arises to refrain from conduct likely to cause injury or damage [to the property of another]." *Cincinnati & Suburban Bell Tel. Co. v. Eadler*, 75 Ohio App. 258, 261, 61 N.E.2d 795 (1st Dist.1944).

{¶34} The elements of an ordinary negligence action between private parties are (1) the existence of a legal duty, (2) the defendant's breach of the duty, and (3) an injury proximately caused by the breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). The plaintiff has the burden of proof to establish each of these elements by a preponderance of the evidence, and whether a duty exists is a question of law for the court to decide. *Id.*

> The common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances. See *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335, 338, 190 N.E. 924, 925. A person is to exercise that care necessary to avoid injury to others. 70 Ohio Jurisprudence 3d (1986) 62, Negligence, Section 19.

*Id.* at 318-19.

{¶35} Appellants permitted Appellee to use their road. While using the road, Appellee arguably had a duty of care to avoid unreasonable or foreseeable harm to others and the property of others. "The appropriate standard of care may differ with the activity." *Boyd v. Moore*, 184 Ohio App.3d 16, 2009-Ohio-5039, 919 N.E.2d 283, ¶ 11 (2nd Dist.).

Accordingly, Appellants were not precluded from pursuing their negligence-based claims based on the existence of the parties' contract.

{¶36} In addition, Appellee is alleging for the first time on appeal that Appellants' damages are barred by the economic loss rule[1]. They claim Appellants are seeking only monetary damages, which are not recoverable as tort damages. Ohio's economic loss rule generally provides:

> [T]o recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage. Indirect economic damages that do not arise from tangible physical injury to persons or from tangible property damage may only be recovered in contract.

*Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 653 N.E.2d 661 (1995), syllabus. The application of this rule here, though, seemingly bolsters the argument advanced by Appellants. As stated, they seek to recover damages compensating them for the amount of money corresponding with the damage to their private road, the costs they incurred in already repairing it, the loss of use of the road, and the alleged devaluation of their property resulting from the damaged road. These claimed damages highlight that Appellants seek damages corresponding with and arising from tangible property damage.

{¶37} Upon addressing the application of the economic loss rule, several courts have explained, "[w]here the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of contract." *Ineos USA L.L.C. v. Furmanite America, Inc.*, 3rd Dist. Allen No. 1-14-06, 2014-Ohio-4996, ¶ 21, citing *Strategy Group for Media, Inc. v. Lowden,* 5th Dist. Delaware No. 12 CAE 03 0016, 2013-Ohio-1330, ¶ 30.

{¶38} Thus, "where a plaintiff has suffered only economic harm as a result of a defendant's breach of duty, the economic loss rule will bar the tort claim if the duty only arose by contract." *Campbell v. Krupp,* 195 Ohio App.3d 573, 2011-Ohio-2694, ¶ 16 (6th Dist.); *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-

---

[1] This court ordinarily does not address summary judgment arguments not raised to the trial court, but this issue tends to demonstrate the trial court's error.

5409, 835 N.E.2d 701, ¶ 6, quoting *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 7, 560 N.E.2d 206 (1990). "When a duty in tort exists, a party may recover in tort. When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract." *Corporex, supra*, at ¶ 10.

{¶39} Appellee's compensation to Appellants in exchange for permission to use the road was for Appellee to place fill dirt and do certain excavation work. Appellants do not allege in their complaint that Appellee's services to be performed or duty regarding placing dirt were deficient or incomplete. Instead, the duty allegedly breached was related to, but independent from, the contract and existed regardless of it. They did not sue to recover for loss of the benefit of the bargain. Appellants claim Appellee, while using their road, exceeded the bounds of reasonable care and damaged their property.

> When persons or property *outside* the original bargain are damaged, the terms of the bargain no longer control. In such an instance, when there is more than a loss of the benefit of the bargain, when the damages fall outside the definition of "economic loss," a duty outside the contract has been breached. That breach of duty is governed by tort law.

*Sun Refining & Marketing Co. v. Crosby Valve & Gage Co.*, 68 Ohio St.3d 397, 399, 627 N.E.2d 552 (1994).

{¶40} The claims made by Appellants arise from a duty owed independent of the contract, i.e., the duty not to damage property of another. Had the road been used absent the agreement, Appellee would arguably be responsible for the damage it caused.

{¶41} As stated, Appellants seek damage to property allegedly caused by Appellee's use of the road. Because these damages are distinct from a breach of the parties' contract, their claims sound in tort.

{¶42} Based on the foregoing, we conclude Appellants' first and second assigned errors have merit. Because their negligence, negligence per se, and willful damage to property claims were not challenged on any other basis, we reverse the court's decision on these claims. These causes of action are reinstated on remand.

Assignment of Error Three: Implied Warranty of Suitability

{¶43} Appellants' third assignment of error asserts:

"The Trial Court erred when it dismissed the Plaintiffs' claims for breach of an implied warranty as Ohio law recognizes implied duties arising from contracts."

Case No. 23 MO 0007

{¶44} Appellants contend Appellee breached its implied duty to use "suitable vehicles" while using their road and that this duty was implied via their contract.

{¶45} Regarding this claim, the trial court held in part: "Presutti's breach of implied warranty of suitability claim is inapplicable in this case and cannot stand because Ohio Courts do not support recovery for breach of implied warranty of suitability." (February 1, 2023 Judgment.)

{¶46} Some states recognize a contractor's implied warranty of suitability or habitability of construction work. *See Forest City Stapleton Inc. v. Rogers*, 2017 CO 23, 393 P.3d 487 (Colo. 2017), and *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 340, 54 Tex. Sup. Ct. J. 822, 2011 WL 1445950. However, Ohio has not adopted this implied warranty. The Ohio Supreme Court has addressed this type of claim and stated in part:

> In *Mitchem [v. Johnson*, 7 Ohio St.2d 66, 218 N.E.2d 594 (1966)], we carefully distinguished between (1) an implied warranty of suitability for the purpose intended, which we declined to impose on the builder-vendor, and (2) the duty to construct in a workmanlike manner using ordinary care, which we held to be a duty imposed by law on the builder-vendor. Under implied warranty, not imposed by *Mitchem*, the vendee would recover upon showing merely a defect in the structure and causation, even though the builder-vendor proved ordinary care and skill in the construction of the residence. * * * We, therefore, held in *Mitchem* there was no implied warranty of suitability for the purpose intended. * * *
>
> The duty implied in the sale between the builder-vendor and the immediate vendee is the duty imposed by law on all persons to exercise ordinary care. In an action by a vendee against the builder-vendor of a completed residence for failure to construct in a workmanlike manner using ordinary care, the essential allegation is, viz., the builder-vendor's negligence proximately caused the vendee's damages. The action, therefore, arises ex delicto * * *."

(Footnote omitted.) *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 377-378, 433 N.E.2d 147 (1982).

Case No. 23 MO 0007

**{¶47}** Appellants do not provide authority in support of their assertion that the implied warranty of suitability exists in Ohio or if it did, it would apply in the manner they claim. Because this claim does not set forth a cause of action in Ohio, we agree with the trial court's decision granting summary judgment in Appellee's favor on this cause of action. Thus, this assigned error lacks merit and is overruled.

Assignment of Error Four:  Unjust Enrichment

**{¶48}** Appellants' fourth assignment of error asserts:

"The Trial Court erred when it dismissed the Plaintiffs' claim for unjust enrichment as it determined that the claim was precluded because of the existence of a contract between the parties."

**{¶49}** Appellants urge us to find the trial court erred by granting Appellee summary judgment on Appellants' unjust enrichment claim. Appellants contend the existence of a breach of contract claim does not necessarily preclude an allegation for unjust enrichment and they were asserting several claims in the alternative.

**{¶50}** The trial court held in part Appellants' unjust enrichment claim failed as a matter of law "[b]ecause it is undisputed in the within case that a contract existed. Plaintiffs cannot assert a claim for unjust enrichment." (February 1, 2023 Judgment.) It also stated, "'[u]nder Ohio law, the existence of a valid, enforceable contract covering the subject of a dispute generally precludes a claim for unjust enrichment.' *Cleveland Central Catholic High School v. Mills*, 2018-Ohio-4873, ¶ 44 (8th Dist.)." (February 1, 2023 Judgment.)

**{¶51}** Contrary to the trial court's decision, causes of action for breach of contract and unjust enrichment can be plead in the alternative and can co-exist when work or other benefits are conferred beyond the scope or terms of an agreement. *See Moosehead Harvesting, Inc. v. Eureka Midstream, LLC*, 7th Dist. Monroe No. 18 MO 0015, 2019-Ohio-3961, ¶ 13-14; *Four Elyria Co., LLC v. Brexton Construction, LLC*, 2022-Ohio-2989, 195 N.E.3d 1083, ¶ 24.

**{¶52}** However, the allegations and facts in evidence here do not show Appellants plead a viable unjust enrichment claim.

**{¶53}** To establish a claim for unjust enrichment, one must establish: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Johnson v. Microsoft Corp.*, 106

Case No. 23 MO 0007

Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

**{¶54}** "Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.'" *Bldg. Industry Consultants, Inc. v. 3M Parkway, Inc.*, 9 182 Ohio App.3d 39, 2009-Ohio-1910, 911 N.E.2d 356, ¶ 16,(9th Dist.) quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). The purpose of an unjust enrichment claim is to compensate the plaintiff for the benefit she has conferred on the defendant. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 21.

**{¶55}** Count four of Appellants' complaint alleges Appellee was "unjustly enriched at the expense of the Plaintiff" and Appellee received a benefit of "money as part of the [ODOT] construction project * * * under circumstances making it inequitable for [Appellee] to retain the benefit." (July 9, 2020 Complaint.)

**{¶56}** Appellants allege Appellee's retention of the benefit conferred by ODOT, i.e., money paid to Appellee for its performance under the ODOT contract, is unjust because their road was damaged during the project. Appellants do not, however, allege Appellee retained a benefit that belongs to them—they claim Appellee benefitted from another, and in the process, Appellee damaged their property.

**{¶57}** Because the allegations and facts in evidence do not state a viable unjust enrichment claim, the trial court's decision granting summary judgment against Appellants on their unjust enrichment claim is affirmed. *Mentor Exempted Village School Dist. Bd. of Edn. v. Lake Cty. Educational Serv. Ctr. Governing Bd.*, 2016-Ohio-7649, 74 N.E.3d 706, ¶ 89 (11th Dist.) ("A plaintiff must establish that it conferred a benefit on the defendant, that the defendant had knowledge of the benefit, and that the defendant's retention of the benefit under the circumstances is unjust without compensation or payment.")

**{¶58}** Appellee did not unjustly retain a benefit bestowed by Appellants. The only benefit bestowed was the use of the road, which Appellee paid for by moving and grading fill dirt near Appellants' detached garage. This was a bargained-for exchange. The fact that the road was damaged during use does not show a benefit conferred by Appellants, and as such, the trial court was correct in its decision to grant summary judgment against Appellants on this claim, albeit for a different reason.

Case No. 23 MO 0007

**{¶59}** This assignment of error is overruled.

<u>Assignment of Error Five: Standing</u>

**{¶60}** Appellants' fifth assigned error contends:

"The Trial Court erred when it dismissed the Lucas Plaintiffs' claims stating they did not have standing to sue the Defendant."

**{¶61}** We review issues relative to standing de novo since standing presents an issue of law. *State ex rel. Merrill v. Ohio Dept. of Nat. Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 27. To establish standing, a plaintiff must show: "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Sutherland v. Gaylor*, 10th Dist. Franklin No. 20AP-257, 2021-Ohio-1941, ¶ 18. "[S]tanding depends on whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, quoting *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15.

**{¶62}** The trial court found on this issue in part:

Contrary to Plaintiffs' assertions, members of an LLC cannot sue on the LLC's behalf for injuries to the LLC, even if they are claiming alleged injury to themselves, unless they can claim damages which are separate and distinct from those suffered by the LLC. Here, the Lucases claim relief as a result of damage caused to Veto Drive because of an alleged breach of the contract entered into between Presutti and Eclipse. The Lucases alleged injury is the same alleged injury to Presutti. Because their claimed injury is 'identical or duplicative,' this Court finds that the Lucases have no standing to file as individual plaintiffs. Because the Lucases have no standing to sue, all of their claims against Eclipse fail as a matter of law.

(February 1, 2023 Judgment.)

**{¶63}** As Appellee alleges and the trial court held, a limited liability company is separate from its members, and members of a limited liability company lack standing to sue for injuries sustained by the company. And vice versa, a company lacks standing to sue for injuries sustained by its members or owners. *Bridge Health Care Partners, LLC*

<u>Case No. 23 MO 0007</u>

*v. LTAH Real Estate Holdings, LLC*, 7th Dist. Jefferson No. 21 JE 0010, 2022-Ohio-1053, ¶ 45-46.

**{¶64}** Appellee urged the trial court to find the Appellants lacked standing to sue for any damages since they had transferred their ownership interest in the road to Presutti before the damage occurred.

**{¶65}** The evidence shows in part that Appellant David Lucas signed the parties' agreement as "property owner" and representative of his company. Moreover, his testimony and the allegations in the complaint tend to show he and his wife have sustained damages in addition to and distinct from those sustained by the company as a result of Appellee's alleged negligent damage to the roadway. *Id.* at ¶ 46. For example, David testified he purchased gravel, and he and his son spent days spreading gravel to temporarily resolve the issues with the road. David also testified he and his wife sustained a decreased property value as a result of the damage; he was unable to use certain vehicles based on the condition of the road; and he paid rent to store his personal vehicles elsewhere.

**{¶66}** Appellee, on the other hand, claims that public records show the Lucases' residence belongs to the company, not to them personally. Because the evidence is not conclusive as to whether these alleged damages, expenses, and losses were incurred by and belong to Presutti or the Lucases, summary judgment was inappropriate.

**{¶67}** Accordingly, this assigned error has merit. The trial court's decision concluding the Lucases' personal claims fail as a matter of law is reversed.

<u>Assignment of Error Six: Future Damages</u>

**{¶68}** Appellants' sixth and final assigned error contends:

"The Trial Court erred when it dismissed the Plaintiffs' claims for future damages."

**{¶69}** Appellee alleged in their summary judgment motion that the Appellants should be precluded from pursuing and recovering the $69,500 they seek to recover because Appellants no longer own the road and are not responsible for its repair or maintenance. Appellee did not claim Appellants should be precluded from recovering any damages or amounts expended to remedy and repair the road, but only amounts not yet paid to do so as "future damages."

**{¶70}** Appellee claims this is an issue of future damages, and Appellants should be precluded from recovering this amount as a matter of law since Appellants cannot

establish these future damages with any reasonable degree of certainty.  The trial court agreed.  It held in part:

> This Court finds that Plaintiffs cannot claim damages for future repairs to Veto Drive because Presutti transferred ownership and control of the drive to the local government. Plaintiffs allege they are entitled to future damages for the cost to replace Veto Drive, which they estimate is at least $69,500.  This claim for damages is based on the idea that Plaintiffs will need to expend funds to repair Veto Drive in the future. Ohio law provides that a plaintiff must prove the existence and amount of future damages with a reasonable degree of certainty.  *See Fouty v. Ohio Dept. of Youth Serv.,* 167 Ohio App.3d 508, 2006-Ohio-2957,134 (10th Dist.)
>
> However, Plaintiffs have established without dispute that they will not bear any future damages or expenses for repairing the road because Presutti has transferred ownership and control of Veto Drive to the local township's government. This transfer means that Plaintiffs have no obligation whatsoever to repair Veto Drive. Moreover, Mr. Lucas acknowledged that Presutti no longer has any responsibility to repair Veto Drive and that he did not make a separate agreement with the townships to shoulder any repair costs, and thus any repairs would be the obligation of the townships, and not Presutti. Therefore, Plaintiffs' future damages claim for future repairs of Veto Drive fails as matter of law.

(February 1, 2023 Judgment.)

**{¶71}** Appellee claims David testified during his deposition that Appellants transferred ownership of the road to the township; they did not pay the $69,000 to replace/repair the road; and thus, any repairs to the road are now the township's responsibility.

**{¶72}** Notwithstanding, it appears Appellee and the trial court employed an incorrect definition of "future damages."  The term "future damages" is defined as "[m]oney awarded to an injured party for an injury's residual or projected effects, such as those that reduce the person's ability to function. • Examples are expected pain and suffering, loss or impairment of earning capacity, and projected medical expenses."

Case No. 23 MO 0007

DAMAGES, *Black's Law Dictionary* (11th ed. 2019). Future damages are not damages actually and already sustained but not yet paid for, remedied, or completed. *Id.*

**{¶73}** Here, no one is claiming the damage to the road was projected to continue. The damage was done, but the repairs were incomplete. Thus, Appellants' claimed damages are general or direct damages, which are defined as "[d]amages that the law presumes follow from the type of wrong complained of; specif., compensatory damages for harm that so frequently results from the tort for which a party has sued that the harm is reasonably expected and need not be alleged or proved. • General damages do not need to be specifically claimed." DAMAGES, *Black's Law Dictionary* (11th ed. 2019).

**{¶74}** Further, Appellee and the trial court cite *Fouty v. Ohio Dept. of Youth Serv.*, 167 Ohio App.3d 508, 2006-Ohio-2957, ¶ 33-34 (10th Dist.), involving the issue of future damages, i.e., future lost wages, claimed by an employee wrongfully discharged after a bench trial. *Fouty* held in part the plaintiff had to prove the existence and amount of future damages with a reasonable degree of certainty. Unlike the instant case, the appeal in *Fouty* involved damages the plaintiff was projected to incur in the future. *Id.*

**{¶75}** Because the trial court concluded Appellants are barred from recovering these future damages, when they are not future damages, its decision is erroneous and this assigned error has merit. Thus, the Trial Court's dismissal of Plaintiff's damage claim is reversed.

**{¶76}** Notwithstanding, we note Appellants conceded during oral argument they are not seeking damages for repairs made to the road after it was transferred to the township.

Conclusion

**{¶77}** Based on the foregoing, Appellants' first and second assigned errors have merit. The trial court's decision entering summary judgment against Appellants on their negligence, negligence per se, and willful damage to property claims is reversed, and these causes of action are reinstated on remand.

**{¶78}** As for the court's decision granting Appellee summary judgment on Appellants' implied warranty of suitability claim, we find Appellants' third assigned error lacks merit. We affirm the grant of summary judgment in Appellee's favor on this claim.

**{¶79}** Regarding Appellants' fourth assignment of error, we affirm the trial court's decision to award summary judgment against Appellants on their unjust enrichment claim

Case No. 23 MO 0007

since Appellants fail to direct this court to facts and evidence showing they conferred a benefit on Appellee, other than the contracted use of their road.

{¶80} As for Appellants' fifth assigned error, we conclude the trial court erred in holding David and Barbara Lucas lack standing to pursue any claims on their behalf as a matter of law. To the contrary, the facts and evidence tend to show they may be seeking to recover damages separate and distinct from those suffered and incurred by Presutti, such that they can co-exist. Thus, their fifth assigned error has merit.

{¶81} As for Appellants' final assigned error, we find error and reverse the trial court decision finding Appellants are precluded from recovering future damages.

{¶82} Accordingly, the trial court's decision is affirmed in part, reversed in part, and the case is remanded for further proceedings.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 23 MO 0007

_____

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio is, affirmed in part, and reversed in part. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**